**James CANAVAN**

v.

**LOVETT, SCHEFRIN AND HARNETT et al.**

**No. 2003–0644–Appeal.**

Supreme Court of Rhode Island.

Dec. 16, 2004.

780

Ronald J. Resmini, Esq., for Plaintiff.

Marco P. Uriati, Esq., for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

1. This case alleges malpractice by the law firm Lovett, Schefrin and Harnett (later Lovett, Schefrin, Gallogly & Harnett) and certain of its partners and lawyers, and Debra G. Kohl, a Massachusetts attorney who handled plaintiff's personal injury claim in the Commonwealth on referral, and her law firm Aven & Kohl. Lloyd's of London (Lloyd's), Lovett, Schefrin and Harnett's malpractice insurance carrier, was also a named defendant. After

**OPINION**

FLAHERTY, Justice.

This legal malpractice action was instituted against the Providence Law Firm of Lovett, Schefrin and Harnett (the firm) and several other named defendants arising out of a motor vehicle accident that occurred on January 27, 1988.[1] The Superior Court granted summary judgment in favor of the defendants, reasoning that the plaintiff's cause of action was barred by the applicable statute of limitations for legal malpractice actions as prescribed by G.L.1956 § 9-1-14.3. On appeal, the plaintiff contends that the motion justice erred in determining that the exercise of reasonable diligence would have revealed the alleged malpractice more than three years before the date on which the plaintiff filed suit against the defendants. Alternatively, the plaintiff asks this Court to adopt and apply the "continuous representation doctrine" to toll the statute of limitations for the plaintiff's legal malpractice claims. After reviewing the record in the light most favorable to the nonmoving plaintiff, we decline to fault a lay person under the circumstances presented by this case. For the reasons stated herein, we vacate the judgment of the Superior Court.

**I**

**Facts and Travel**

On January 27, 1988, plaintiff James Canavan was driving a truck in the course

plaintiff filed his malpractice claim, Lloyd's moved for dismissal pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. The Superior Court granted the motion and we affirmed, holding that plaintiff had no standing to bring a direct action against the insurer because he had not yet obtained a judgment against the law firm. *Canavan v. Lovett, Schefrin and Harnett*, 745 A.2d 173, 174 (R.I.2000).

of his employment with AAA Trucking (AAA) when he was involved in a serious motor vehicle collision with an individual named Karl Talabach. The plaintiff retained the law firm of Lovett, Schefrin and Harnett (later Lovett, Schefrin, Gallogly & Harnett) to prosecute a workers' compensation claim on his behalf. The firm also initiated a liability claim against Talabach, which it assigned to one of its attorneys.[2]

The attorney handling the matter immediately pursued plaintiff's liability claim against Talabach's insurer, Hanover Insurance Company (Hanover). On October 27, 1988, Hanover notified defendant firm that its policy limit with Talabach was $10,000. Believing this inadequate to satisfy Canavan's damages, the firm advised AAA and its insurance carrier that plaintiff would be making an underinsured motorist claim. After Liberty Mutual Insurance Company (Liberty) was identified as AAA's insurance carrier, the firm made a claim against that company for underinsured motorist benefits.[3]

The claim against Liberty was referred to Massachusetts attorney Debra Kohl. On December 18, 1990, Kohl informed the firm that Hanover had paid its $10,000 policy limit, which had been forwarded to AAA's workers' compensation insurance carrier in accordance with Rhode Island law. Attorney Kohl also indicated her intention to settle with Liberty for an additional $10,000, and she further notified the firm that Canavan had provided a copy of his Prudential Motor Vehicle insurance policy to her. Because Kohl was concerned about the existence or extent of underinsured coverage under plaintiff's Prudential policy, she requested that the attorney handling the matter on behalf of Lovett, Schefrin and Harnett review it.

On January 4, 1991, Kohl informed the firm that Liberty had offered $10,000 to settle the claim against it and that plaintiff's Prudential policy provided $300,000 coverage for underinsured motorist benefits. Kohl encouraged the firm to pursue the Prudential coverage and asked its advice on whether to accept the $10,000 from Liberty before the Prudential claim was pursued. On February 14, 1991, the attorney handling the matter for Lovett, Schefrin and Harnett made a claim for underinsured benefits against Prudential, notifying it that the earlier claim against Talabach and Hanover had been settled. At that time, the firm also requested Prudential's permission to settle with Liberty.

In response, Prudential wrote letters to Canavan on April 2, 1991, and May 13, 1991, informing him that it was reserving its right to deny coverage because it had received late notice of his claim. In accordance with the terms of his policy, plaintiff provided a written statement to Prudential on May 1, 1991. In that statement, Canavan made only a passing reference to the filing of his claim: "[a]ccording to my Attorney, * * * we first placed Prudential on notice for this claim on February 14, 1991, when we were notified by Hanover [Insur-

---

**2.** The parties point out that there is a fact dispute as to when plaintiff advised the attorney handling the claim of the existence of insurance policies he maintained on his own motor vehicle with Prudential Property and Casualty Insurance Company that were in effect at the time of the car accident. For the purposes of defendants' motion for summary judgment, however, the parties stipulate that plaintiff first provided defendant with a copy of his Prudential policy before December 1990.

**3.** Because the matter involved Massachusetts law, Lovett, Schefrin and Harnett subsequently referred plaintiff's liability claim against Talabach and Hanover to attorney Debra Kohl, an attorney practicing in Fall River, Massachusetts. The firm notified plaintiff of this on August 1, 1990. Kohl is one of the named defendants in this action.

ance Company] and Liberty Mutual Insurance [Company] that they only had minimal coverage in effect."

In a separate letter dated July 15, 1991, Prudential's counsel informed the firm that Prudential was not liable under its policy for Canavan's claim for three reasons. They were: (1) late notice of the claim; (2) lack of consent to the settlement with Talabach and Hanover; and (3) plaintiff was not entitled to recover under the underinsured motorist policy and Rhode Island law because the claim with Talabach and Hanover had been settled. Significantly, there is no evidence in the record that either Prudential or any defendant provided a copy of that correspondence to Canavan.

Through defendant law firm, Canavan initiated a breach of contract action against Prudential in Superior Court on October 8, 1991. In the course of that litigation, Canavan answered interrogatories and was deposed on both June 3, 1994, and October 15, 1994. In January 1996, while the lawsuit against Prudential still was pending, a named partner in defendant law firm advised Canavan that he should retain new counsel in light of the defenses raised by Prudential. The plaintiff retained new counsel as early as January 31, 1996, and the case against Prudential settled for $20,000 on June 15, 1997.

Canavan then filed this legal malpractice action on November 26, 1997, alleging that defendants were negligent in handling his liability claims with Hanover and Prudential.[4] The defendants moved for summary judgment, contending that plaintiff's suit was barred by the three-year statute of limitations for legal malpractice actions as set forth in § 9–1–14.3.

The Superior Court heard arguments on defendants' motions on October 14, 2003. In contention at that hearing was the date on which the statute of limitations on plaintiff's malpractice claim began to run. The plaintiff's counsel argued that the statute of limitations was not triggered until January 1996, when a partner in the law firm informed Canavan of the potential conflict and encouraged him to seek another attorney. Counsel for defendants, on the other hand, argued that the statute of limitations on plaintiff's suit began to run, at the latest, on October 5, 1994, when plaintiff was deposed in the case against Prudential. The defendants' lawyers urged that by that date, Canavan's relationship with Prudential was clearly adversarial, considering that he had filed an action in Superior Court against the company, had given a statement under oath,

---

4. The pertinent allegations in plaintiff's amended complaint are as follows:

"Plaintiff, James Canavan, asserts that [defendants'] failure to notify Prudential Property & Casualty Insurance Company in a timely manner and until after the statute of limitations [on the claim against the original tortfeasor] had expired, was a departure from the standard of practice of the average attorney practicing in personal injury litigation and that [plaintiff] was damaged thereby in an amount which exceeded the jurisdictional minimum of this court."

"Plaintiff, James Canavan, asserts that [defendants'] failure to obtain written permission from Prudential Property & Casualty Insurance Company prior to any settlement with the tortfeasor, Karl D. Talaback [*sic*], was a departure from the standard of practice of the average attorney practicing in personal injury litigation and that [plaintiff] was damaged thereby in an amount which exceeded the jurisdictional minimum of this court."

"Plaintiff, James Canavan, asserts that the advice from [defendants] to settle his claim against the tortfeasor, Karl D. Talaback [*sic*], in the manner in which it was done here was a departure from the standard of practice of the average attorney practicing in personal injury litigation and that [plaintiff] was damaged thereby in an amount which exceeded the jurisdictional minimum of this court."

had answered interrogatories, and had been deposed in the matter. By then, they stressed, the exercise of reasonable diligence should have revealed to him that legal malpractice may have occurred.

The motion justice agreed with defendants and awarded summary judgment in their favor. In a bench decision, the motion justice noted that "[i]t seems to the [c]ourt that when a client is put on notice from an insurance carrier that his claims were not filed timely, a red flag is raised as to whether that failure to timely file was a result of some negligence of his counsel or some other cause." The motion justice found that Canavan had been put on such notice in 1991 when his lawyers initiated the cause of action against Prudential: "[w]ith the knowledge that Mr. Canavan had back in 1991 and which I find not to be disputed, he certainly could have consulted other counsel to discharge his obligation under the statute of limitations to exercise reasonable diligence to discover if a cause of action existed." The plaintiff filed a timely appeal to this Court.

## II

### Standard of Review

■■■ Summary judgment is an extreme remedy that must be cautiously applied. *Johnston v. Poulin,* 844 A.2d 707, 710 (R.I.2004). "This Court reviews a grant of summary judgment on a *de novo* basis." *Johnson v. Newport County Chapter for Retarded Citizens, Inc.,* 799 A.2d 289, 291 (R.I.2002) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, 457 (R.I.1996)). If our review of the evidence viewed in the light most favorable to the nonmoving party reveals no genuine issue of material fact, "and if we conclude that the moving party was entitled to judgment as a matter of law, we shall sustain the trial justice's granting of summary judgment." *Id.* (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996)). On the other hand, if the record evinces a genuine issue of material fact, summary judgment is improper and we will accordingly reverse. *Belanger v. Silva,* 114 R.I. 266, 267–68, 331 A.2d 403, 405 (1975).

## III

### Analysis and Discussion

■■■ The statute of limitations governing legal malpractice causes of action is set forth at § 9–1–14.3. Section 9–1–14.3, which codifies the "discovery rule" exception previously recognized by this Court in the context of medical malpractice, provides that:

"an action for legal malpractice shall be commenced within three (3) years of the occurrence of the incident which gave rise to the action; provided, however, that:

"* * *

"(2) In respect to those injuries due to acts of legal malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident which gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of legal malpractice should, in the exercise of reasonable diligence, have been discovered."

This Court has held that the rationale for this "discovery rule" is to protect individuals suffering from latent or undiscoverable injuries who then seek legal redress after the statute of limitations has expired for a particular claim. *Ashey v. Kupchan,* 618 A.2d 1268, 1269–70 (R.I.1993) (citing *Wilkinson v. Harrington,* 104 R.I. 224, 237, 243 A.2d 745, 752 (1968)). Under the discovery rule, "[i]t is not necessary for the plaintiff to fully appreciate the potential liability, or even be convinced of an injury;

the objective standard requires only that the plaintiff be aware of facts that would place a reasonable person on notice that a potential claim exists." *Riemers v. Omdahl,* 687 N.W.2d 445, 449 (N.D.2004). In keeping with the remedial spirit of the rule, this Court draws "all reasonable inferences" in plaintiff's favor to determine whether, in the exercise of reasonable diligence, plaintiff should have discovered the alleged act of malpractice. *Richmond Square Capital Corp. v. Mittleman,* 689 A.2d 1067, 1069 (R.I.1997) (mem.).

In this case, the motion justice determined that plaintiff should have been alerted to the potential for legal malpractice in 1991, when his breach of contract suit against Prudential was commenced in Superior Court. Besides the lawsuit, the motion justice relied primarily on three separate communications to support his conclusion: the April 2 and May 13, 1991 reservation of rights letters sent from Prudential to plaintiff, and the July 15 denial letter sent from Prudential to defendant law firm. Our review of the record convinces us that the motion justice erred in finding that there was no genuine issue of fact as to when plaintiff's cause of action began to run. We disagree with the motion justice's assessment of the correspondence and will accordingly examine the individual exchanges in turn. In our *de novo* review, we also will examine the substance of plaintiff's signed statement to Prudential and both the interrogatory answers and deposition evidence engendered in the prosecution of plaintiff's claim against the insurance carrier.

### The Letters of April 2, 1991, and May 13, 1991

■ The defendants first assert that plaintiff should have been put on notice of the prospect of malpractice by the letters sent to him by Prudential on April 2, 1991, and May 13, 1991, both of which notified plaintiff that the carrier was reserving its rights because of the lack of timely notice. Examining this correspondence in the light most favorable to plaintiff, however, we cannot conclude that there was anything in those identical letters that adequately suggests that a potential malpractice situation had arisen. Although the letters notified plaintiff that Prudential was reserving its rights to provide underinsured coverage to him, they expressed no indication that Prudential would not pay his claim. Indeed, both letters informed plaintiff that "[t]he service of this notice upon you *does not deprive you of any rights you may have against this company.*" (Emphasis added.) Thus, the letters informed plaintiff only that Prudential was reserving its rights because plaintiff had not provided prompt notice of the claim.

Moreover, we deem it highly significant that neither letter cited Canavan's apparent failure to obtain consent before settling with Hanover as a reason for Prudential's reservation of rights. In late notice cases, this Court has held that the insurance carrier has the "burden to show that it was prejudiced by the insured's late notice before it can 'declare a forfeiture of the bargained-for protection.'" *Avco Corp. v. Aetna Casualty & Surety Co.,* 679 A.2d 323, 329 (R.I.1996) (quoting *Pickering v. American Employers Insurance Co.,* 109 R.I. 143, 160, 282 A.2d 584, 593 (1971)). In consent cases, however, we have deemed that G.L.1956 § 27–7–2.1(h), when read together with a consent exclusion in an insurance policy, unambiguously requires that a plaintiff gain consent of his or her underinsurance carrier before settling with the tortfeasor. Consequently, failure to obtain consent in such circumstances bars the claimant from thereafter seeking the underinsurance coverage protections of his or her own policy. *Manzo v. AMICA Mutual Insurance Co.,* 666 A.2d 417, 417 (R.I.

1995) (mem.); *but see Fraioli v. Metropolitan Property and Casualty Insurance Co.,* 748 A.2d 273, 275 (R.I.2000). Because an insurer's burden of proof is lower in such cases, failure to obtain consent before settling with a tortfeasor's carrier is inherently more damning to a subsequent claim for underinsured benefits than is mere late notice. Considering this critical distinction, we cannot definitively conclude as a matter of law that the letters were sufficient to impart to Canavan enough knowledge from which to suspect potential malpractice by his attorneys, as the letters merely reserved Prudential's rights due to late notice. Viewed in the light most favorable to plaintiff, the letters actually suggest less of a problem than truly existed concerning Canavan's claim for underinsured benefits.

### The Letter of July 15, 1991 and the Commencement of Suit against Prudential

■ The July 15, 1991 denial letter from Prudential attorney Joseph W. Baglini was likewise insufficient to provide plaintiff with any indication of potential malpractice. Although the letter clearly outlined the specific reasons for Prudential's rejection of plaintiff's claim, there is no evidence in the record to suggest that plaintiff received a copy of the communication or ever was advised of its contents.

This inference is buttressed by defendants' interoffice memo dated February 1993 regarding "James Canavan—Possible Malpractice Claim," in which defendant attorneys reviewed the potential malpractice

exposure. Significantly, even though the memo specifically outlines the circumstances of the malpractice, it is silent as to any intention to notify plaintiff. Furthermore, plaintiff testified under oath in an affidavit that he was unaware of the potential malpractice claim until January 1996, when a named partner in the firm informed plaintiff that there was a conflict in the case and that as a consequence defendant firm no longer could represent him.

Because defendants offered no evidence that plaintiff received either a copy or any notification about the contents of the denial letter of July 15, we are also unable to conclude that the commencement of plaintiff's lawsuit against Prudential was sufficient to put plaintiff on notice of any negligence on the part of his lawyers. Considering the evidence in the light most favorable to plaintiff, there is no indication that plaintiff had a satisfactory knowledge of the basis of the claim from which he could have inferred any actionable shortcomings by his attorneys. Also, there is no evidence that plaintiff knew that his action against Prudential was in any way connected to negligent conduct by his lawyers.[5] Drawing all inferences in favor of plaintiff, the interoffice memo also suggests that Canavan actually may have been shielded from the real reasons behind Prudential's denial of his claim.

### Plaintiff's Written Statement to Prudential

■ The defendants next suggest that because plaintiff gave a written statement to Prudential in which he indicated that

---

**5.** In his answers to interrogatories propounded by Canavan, the named partner says that before or shortly after the institution of the suit against Prudential, he spoke with plaintiff and informed him of the reasons why the suit had been commenced and that Prudential had denied the claim because it had not received timely notice and had not consented to the

settlement with Hanover. Without a transcript of the meeting or any further evidence about actual communications made by the parties at that meeting, however, we cannot conclude that the discussion to which the partner refers armed Canavan with enough information from which to suspect malpractice.

the carrier was not notified of his claim until February 14, 1991, he had obtained adequate knowledge of the facts underlying his lawyer's potential malpractice by the date on which he gave the statement. It is our opinion that defendants' argument does not pass muster. The five-page handwritten statement focuses primarily on the causes, circumstances, and injuries sustained by plaintiff in the motor vehicle accident with Talabach. It also briefly summarizes the travel of the case up to that time. Of significant importance, however, the statement does not refer to the circumstances surrounding the late filing, nor does it offer any explanation, defense, or other information relative to the late filing. The only reference made to the topic is Canavan's statement that "[a]ccording to my attorney, * * * we first placed Prudential on notice for this claim on February 14, 1991, when we were notified by Hanover [Insurance Company] and Liberty Mutual Insurance [Company] that they only had minimal coverage in effect." This lone reference to the filing of the claim is insufficient to indicate that Canavan had any knowledge at that time from which to suspect that his attorneys' conduct may have been negligent. Thus, read in the light most favorable to Canavan, the statement does not demonstrate that plaintiff had an awareness of any facts on which to launch an investigation of potential malpractice by his attorneys.

### Interrogatories and Deposition

The defendants next argue that because Canavan both answered interrogatories and was deposed in the Prudential litigation, the alleged acts of attorney negligence were either known to him or readily discernable by October 5, 1994, the date of the deposition. Again, we disagree. The mere fact that plaintiff answered interrogatories in the underinsured motorist action against Prudential lends no support

to defendants' contention. We have examined plaintiff's answers, and they contain no reference whatsoever to either the late filing of the claim or to the settlement without consent of the insurer. Like his written statement to Prudential, plaintiff's interrogatory answers discuss the circumstances surrounding the motor vehicle accident, his recollection of those events, the injuries sustained as a result of the collision, and the extent of medical treatment received as a result of those injuries. It is the content of that discovery, not the mere fact that it was propounded, which seems critical to us.

We likewise discern no merit in defendants' argument that plaintiff was alerted to the potential malpractice simply because he was deposed in the suit against Prudential. The defendants have submitted only the cover page of the deposition transcript, implying that plaintiff's mere attendance at the deposition is enough to suggest that he had acquired the requisite knowledge of malpractice in the case. However, without a transcript of relevant deposition testimony, it is impossible for this Court to accept defendants' arguments. Because the deposition was not produced either to us or to the hearing justice, this Court will not speculate as to its contents.

In view of the circumstances of this case, and considering the evidence presented by the parties, we hold that an issue of fact exists as to whether the exercise of reasonable diligence could have discovered the defendants' potential malpractice prior to January 1996, when a partner in the firm informed him of a potential conflict in the case and advised him to seek other counsel. That this meeting was the first time the plaintiff may have heard the word "malpractice" is of little consequence and merely coincidental in our view of the record. As a result, the fixing of the date of the plaintiff's discovery of the alleged mal-

practice presents a genuine issue of material fact that requires a trial. Accordingly, we conclude that the motion justice erred in finding that the statute of limitations on the plaintiff's claim began to run in 1991, and therefore, the extraordinary remedy of summary judgment was error. Because we have determined that summary judgment was not proper, we need not address whether the continuing representation doctrine is applicable to this case. *See Mittleman*, 689 A.2d at 1069.

## Conclusion

For the reasons stated herein, we sustain the plaintiff's appeal and vacate the summary judgment entered in favor of the defendants. The record shall be remanded to the Superior Court for proceedings in accordance with this opinion.