May 2, 2023

**Supreme Court**

No. 2022-151-Appeal.
(KC 16-839)

Nancy Wildes Smith   :

v.   :

John R. Paquette, DMD, et al.  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Nancy Wildes Smith                    :

v.                    :

John R. Paquette, DMD, et al.          :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The *pro se* plaintiff, Nancy Wildes Smith, appeals from a Superior Court judgment in favor of the defendants, John R. Paquette, DMD, and Warwick Family Dental Group Two, Inc. (Warwick Family Dental) (collectively defendants), following the grant of the defendants' motion for summary judgment.[1]  On appeal, the plaintiff contends that the hearing justice erred in granting the defendants' motion for summary judgment based on Rhode Island's three-year statute of limitations for medical malpractice claims.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record,

---

[1] While plaintiff appears before us *pro se*, at oral arguments she affirmed that she is a practicing attorney in Connecticut, and she did not dispute opposing counsel's indication that she is also licensed in Rhode Island.

we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

From June 2010 until March 2013, plaintiff was a patient at Warwick Family Dental, with Dr. Paquette serving as her primary dentist. After determining that plaintiff needed a crown on tooth number twelve, Dr. Paquette installed a crown on April 19, 2012.[2] Thereafter, plaintiff continued to be seen by defendants until a routine cleaning on March 6, 2013. At that visit, a hygienist identified a four-millimeter periodontal pocket between the crowned tooth number twelve and tooth number thirteen.[3]

On April 12, 2013, in search of a second opinion with respect to the hygienist's conclusion, plaintiff saw Nicole Kim, a general dentist with NDK Dental. In a consultation Dr. Kim recommended that plaintiff undergo a comprehensive oral examination, which Dr. Kim performed on June 7, 2013. Based on her exam, Dr. Kim determined that plaintiff was experiencing bone loss between tooth number

---

[2] Tooth number twelve is the upper left second bicuspid.

[3] A "periodontal pocket" is an abnormal extension of the space between the gum and the tooth. 4 J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine and Word Finder* 181 (2000); Stedman's Medical Dictionary 1527 (28th ed. 2006).

twelve and tooth number thirteen and recommended that plaintiff see a periodontist for further evaluation.

Shortly thereafter, on June 13, 2013, plaintiff was seen by a periodontist, Brenda Pierce, DDS, who confirmed Dr. Kim's bone-loss diagnosis and further determined that osseous surgery was necessary. Doctor Pierce also found that the crown on tooth number twelve was problematic. Specifically, Dr. Pierce's patient notes for plaintiff state, "[t]ooth [number twelve] has a crown margin that is overhung and extends quite a bit apically on the distal." The patient notes indicate that Dr. Pierce discussed three potential causes of the bone loss with plaintiff. Doctor Pierce wrote that a fracture or plaintiff's own anatomy could have contributed to the bone loss, or "[t]here could also be food impaction since there is definitely an open margin" between tooth number twelve and tooth number thirteen.

Based on Dr. Pierce's recommendation that closing the crown margin before plaintiff's osseous surgery would optimize healing, Dr. Kim inserted a temporary crown on plaintiff's tooth number twelve on July 10, 2013. Doctor Pierce performed osseous surgery for plaintiff on July 16, 2013, and Dr. Kim inserted a second temporary crown shortly thereafter. A few months later, Dr. Kim placed a permanent crown on the tooth.

Initially, plaintiff's dental insurer, Delta Dental of Rhode Island (Delta Dental), denied coverage for the new crown because Dr. Paquette had placed the

first crown within Delta Dental's sixty-month contractual time limitation. On July 16, 2013, plaintiff prepared an email to Delta Dental that contained a detailed explanation of the sequence of events relating to tooth number twelve. In the email, plaintiff described Dr. Kim's and Dr. Pierce's observations regarding the crown and further stated, "[w]hile I believe that the crown done for me by Dr. Paquette looked very nice in terms of color matching, it seems that it was lacking in functionality in that it was not properly covering the area needed. I believe that the resulting space caused the problem I have now." The plaintiff requested that the insurer reconsider the denial of benefits and "investigate [the] situation for [plaintiff]." The plaintiff sent the email on July 17, 2013.

Thereafter, plaintiff received a letter dated August 19, 2013, from Delta Dental's Associate Dental Director, Sharon A. Trahan, DMD, granting her appeal. Doctor Trahan's written decision "in response to [plaintiff's] complaint against Dr. John Paquette" stated that, after having reviewed the documentation from Dr. Paquette, Dr. Kim, and Dr. Pierce, she concluded that Dr. Paquette "used poor clinical judgment that resulted in a substandard crown" and that "[t]his contributed to the periodontal deterioration between [tooth number twelve] and [tooth number thirteen] necessitating the surgical procedure." Accordingly, Warwick Family Dental was required to return what Delta Dental had paid for the first crown placed

on plaintiff's tooth number twelve. The letter also indicated that plaintiff's replacement crown would not be subject to the policy's time limitation.

Precisely three years after receiving the letter granting her appeal, on August 19, 2016, plaintiff filed a dental malpractice claim against defendants. The defendants filed answers that denied liability for plaintiff's injuries and asserted several affirmative defenses, including those related to the statute of limitations. On November 17, 2021, defendants filed a joint motion for summary judgment asserting that the statute of limitations for plaintiff's claims expired no later than three years from June 13, 2013.[4] The plaintiff objected to the motion, asserting that the statute of limitations did not begin to run until she received the letter from Delta Dental dated August 19, 2013. Thus, plaintiff argued, her complaint was timely filed.

The hearing justice heard arguments on the motion on March 28, 2022. At the hearing, defendants argued that the undisputed evidence demonstrated that "a person in the exercise of reasonable diligence would have discovered [defendants'] wrongful conduct" by July 16, 2013, when plaintiff prepared the emailed appeal to Delta Dental. In response, plaintiff denied knowing for certain whether Dr. Paquette's misconduct caused the bone loss until she received the letter from Delta Dental on August 19, 2013. The hearing justice then rendered a bench decision

---

[4] According to a December 4, 2020 scheduling order, the progress of the case was stalled due to plaintiff's continued treatment for her injuries.

granting defendants' motion for summary judgment. The hearing justice determined that July 16, 2013, was the operative date for the running of the statute of limitations because plaintiff's email to Delta Dental "clearly says the crown is lacking in functionality and is not properly covering the area as needed."

An order granting summary judgment and final judgment in favor of defendants entered on May 9, 2022. On April 14, 2022, plaintiff filed a premature yet timely notice of appeal.

## II

## Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*." *Borgo v. Narragansett Electric Company*, 275 A.3d 567, 571 (R.I. 2022) (brackets omitted) (quoting *Shorr v. Harris, as Trustee of Trust of Anna H. Blankstein*, 248 A.3d 633, 636 (R.I. 2021)). "We will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Shorr*, 248 A.3d at 636). It is also well settled that "the question of whether a statute of limitations has run against a plaintiff's claim is a question of law, which this Court reviews *de novo*." *Goddard v. APG Security-RI, LLC*, 134 A.3d 173, 175 (R.I. 2016) (brackets and deletion

omitted) (quoting *Ho-Rath v. Rhode Island Hospital*, 115 A.3d 938, 942-43 (R.I. 2015)).

## III

## Discussion

In Rhode Island, a cause of action for medical malpractice must be brought within three years of the date of the alleged act of malpractice. G.L. 1956 § 9-1-14.1 ("[A]n action for medical * * * malpractice shall be commenced within three (3) years from the time of the occurrence of the incident that gave rise to the action."). This edict, however, is not absolute and yields to the "discovery rule," which is now codified in § 9-1-14.1(3):[5]

> "In respect to those injuries or damages due to acts of medical * * * malpractice that could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident that gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of the malpractice should, in the exercise of reasonable diligence, have been discovered."

The discovery rule exception "serves to protect individuals suffering from latent or undiscoverable injuries who then seek legal redress after the statute of limitations has expired for a particular claim." *Fogarty v. Palumbo*, 163 A.3d 526, 534 (R.I.

---

[5] This rule was previously codified at G.L. 1956 § 9-1-14.1(2). The statute was amended in 2018, but the pertinent language of the rule remained the same. *See* P.L. 2018, ch. 154, § 1; P.L. 2018, ch. 273, § 1. The Court refers to its current section number—§ 9-1-14.1(3)—throughout this opinion.

2017) (quoting *Behroozi v. Kirshenbaum*, 128 A.3d 869, 873 (R.I. 2016)). Nevertheless, the remedial aim of the discovery rule is balanced "against the need of society and the judicial system for finality—for a closing of the books." *Bustamante v. Oshiro*, 64 A.3d 1200, 1208 (R.I. 2013) (quoting *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 181 (R.I. 2008)).

The parties do not dispute that the discovery rule applies to plaintiff's claims. Instead, the parties only dispute the precise date the three-year statute of limitations period began to run. The plaintiff argues that the statute of limitations began to run for her dental malpractice claim when she received the August 19, 2013 letter from Delta Dental granting her appeal based on Dr. Paquette's suspected professional misjudgment. The plaintiff submits that this is the earliest date that she knew or had reason to know the cause of her injury. Before this date, plaintiff argues that she merely had a "layperson suspicion that was unconfirmed by either [her] dentist or periodontist * * * ."

In response, defendants argue that the statute of limitations began to run, at the latest, on July 16, 2013. The defendants submit that, at that point, as demonstrated by her letter to Delta Dental, plaintiff was apparently aware that the crown installed by Dr. Paquette was problematic and could be connected to her bone loss. Thus, defendants contend that plaintiff was on notice that she had a potential claim against defendants for medical malpractice.

"The standard applied to [the discovery rule] exception is objective: It requires only that the plaintiff be aware of facts that would place a reasonable person on notice that a potential claim exists." *Fogarty*, 163 A.3d at 534 (quoting *Behroozi*, 128 A.3d at 873). Where, as in the case before us, "the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing occur at different points in time, the running of the statute of limitations [begins] when the person discovers, or with reasonable diligence should have discovered, the *wrongful conduct*." *Zuccolo v. Blazar*, 694 A.2d 717, 719 (R.I. 1997) (deletions omitted) (quoting *Anthony v. Abbott Laboratories*, 490 A.2d 43, 46 (R.I. 1985)). "If a reasonable person in similar circumstances should have discovered that the wrongful conduct of the defendant caused his or her injuries as of some date before the plaintiff alleged that he or she made this discovery, then the earlier date will be used to start the running of the limitations period." *Bustamante*, 64 A.3d at 1204 (brackets omitted) (quoting *Hanson v. Singsen*, 898 A.2d 1244, 1249 (R.I. 2006)). Nevertheless, this Court draws "'all reasonable inferences' in plaintiff's favor to determine whether, in the exercise of reasonable diligence, plaintiff should have discovered the alleged act of malpractice." *Canavan v. Lovett, Schefrin and Harnett*, 862 A.2d 778, 784 (R.I. 2004) (quoting *Richmond Square Capital Corp. v. Mittleman*, 689 A.2d 1067, 1069 (R.I. 1997) (mem.)).

It is our opinion that plaintiff's dental malpractice claims against defendants are time-barred because, by June 13, 2013, plaintiff was aware of facts that, in the exercise of reasonable diligence, should have led her to discover that defendants' alleged wrongful conduct caused her to be injured. By June 13, 2013, plaintiff was equipped with Dr. Kim's and Dr. Pierce's diagnoses of bone loss in the immediate area surrounding the tooth where Dr. Paquette placed the crown, Dr. Pierce's theory of potential sources of the ailment, and Dr. Pierce's recommended treatment. This is more than enough to place a person in plaintiff's position, in the exercise of reasonable diligence, on notice that a potential claim against defendants existed. *See Fogarty*, 163 A.3d at 534.

Even though Dr. Pierce identified other potential causes of plaintiff's bone loss, we have previously held that even the mere suggestion of a possible connection between a plaintiff's injuries and a defendant's alleged wrongful conduct is enough to trigger the running of the statute of limitations. *Bustamante*, 64 A.3d at 1207-08; *Zuccolo*, 694 A.2d at 719. For this reason, plaintiff's reliance on our decision in *Zuccolo* is misplaced.

In *Zuccolo*, the plaintiff suspected a connection between his swelling joints and a medication prescribed by the defendant in 1985. *Zuccolo*, 694 A.2d at 718. Nevertheless, between 1985 and 1988, three different doctors misdiagnosed the plaintiff with rheumatoid arthritis and expressly rejected the plaintiff's suspicions

- 10 -

regarding the cause of his complaints. *Id.* Because the plaintiff's suspicions had not been confirmed, "and in fact had been explicitly contradicted[,]" this Court held that the statute of limitations for the plaintiff's medical malpractice claim did not begin to run until he finally received an MRI in December 1988. *Id.* at 719. The MRI revealed that he was suffering from avascular necrosis and a fourth doctor "ambiguously suggested" that the plaintiff's condition could be related to a previously prescribed medication. *Id.* at 718.

Our holding in *Zuccolo* is instructive in this regard. Akin to the plaintiff in *Zuccolo*, here, dissatisfied with the original explanation she received from the hygienist at Warwick Family Dental, plaintiff pursued a second opinion from Dr. Kim. *See Zuccolo*, 694 A.2d at 719. Fortunately for plaintiff, however, she was not made to run the gauntlet of inaccurate diagnoses. Instead, Dr. Pierce's treatment notes clearly document discussions with plaintiff regarding the bone-loss diagnosis, potential causes, and suggested treatment—which notably included replacing the defective crown.

To be sure, whether plaintiff "subjectively suspected that defendants had done something wrong is of scant relevance in the discovery-rule analysis * * *." *Bustamante*, 64 A.3d at 1206. Nonetheless, our conclusion that plaintiff's claim ripened by June 13, 2013, is buttressed further by the statements made in plaintiff's July 16, 2013 emailed appeal to Delta Dental. In the email, plaintiff memorialized

- 11 -

discussions with Dr. Pierce relating to "a gap of space [between tooth number twelve and tooth number thirteen] that would have allowed food to lodge there causing bacteria that went into the gum" and plaintiff's belief that the crown inserted by Dr. Paquette "seem[ed] that it was lacking in functionality in that it was not properly covering the area needed." These statements do more than demonstrate a mere suspicion of defendants' alleged wrongdoing; instead, the statements demonstrate that plaintiff had already acquired enough facts to connect her injuries with defendant's alleged wrongdoing. *See Bustamante*, 64 A.3d at 1208; *Zuccolo*, 694 A.2d at 719.

Delta Dental's August 19, 2013 letter may have provided "a clear-cut anchoring [of the plaintiff's injuries] to the allegedly negligent conduct of" the defendants, but the discovery rule does not require such exacting clarity. *Bustamante*, 64 A.3d at 1207. Instead, "in the exercise of reasonable diligence[,]" the plaintiff should have discovered the defendants' alleged acts of malpractice by the plaintiff's examination with Dr. Pierce on June 13, 2013. Section 9-1-14.1(3). The three-year statute of limitations for the plaintiff's claim, therefore, began to run on that date, and thus the plaintiff's August 19, 2016 complaint is time-barred.

**IV**

**Conclusion**

For the reasons set forth herein, we affirm the judgment of the Superior Court.

The record may be returned to the Superior Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Nancy Wildes Smith v. John R. Paquette, DMD, et al. |
| **Case Number** | No. 2022-151-Appeal.<br>(KC 16-839) |
| **Date Opinion Filed** | May 2, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Nancy Smith, *pro se*<br>For Defendants:<br><br>Alan R. Tate, Esq. |