**Supreme Court**

No. 2015-337-Appeal.
(PC 09-4512)

Charles S. Faber et al.           :

v.                   :

Francine A. McVay et al.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Charles S. Faber et al.          :

v.                              :

Francine A. McVay et al.         :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on January 26, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The plaintiffs, Charles S. Faber, M.D. (Dr. Faber), and Karen M. Faber[1] (Mrs. Faber) (collectively, plaintiffs), appeal from a grant of summary judgment in favor of the defendants, Francine A. McVay (McVay), Wickford Insurance Agency, Inc. (Wickford), Lauren Albright (Albright), Mastors & Servant, Ltd. (M&S), Judith Gordon (Gordon), and Marketing Associates Insurance Agency, Inc. (Marketing Associates) (collectively, defendants),[2] on the plaintiffs' claims of insurance malpractice.  The Superior Court directed the entry of summary judgment on the basis that the plaintiffs' claims were time-barred under G.L. 1956 § 9-1-14.1, which sets forth a three-year limitation period for insurance malpractice claims.  After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and

---

[1] Mrs. Faber has alleged a claim for loss of consortium which is derivative of Dr. Faber's claims.

[2] Chubb Group of Insurance Companies (CHUBB) a/k/a Chubb Indemnity Insurance Company and Chubb National Insurance Company, Vigilant Insurance Company, and Federal Insurance Company were also named as defendants.  On May 21, 2014, summary judgment was entered in favor of these defendants, but plaintiffs did not appeal.

that this case should be decided without further briefing or argument. We affirm the judgment of the Superior Court.

## Facts and Travel

We derive the facts relevant to this appeal from the filings of the parties; they are largely undisputed. From 1998[3] until her retirement in 2005, McVay acted as Dr. Faber's insurance agent. McVay was originally employed by Bodin Insurance Agency but became associated with Wickford around 1994 or 1995. Marketing Associates,[4] an insurance broker, functioned as an intermediary between McVay and Dr. Faber's insurance carriers. According to both Dr. Faber and McVay, Dr. Faber expressed a desire to obtain the best and maximum insurance coverage.

For the October 2002 to October 2003 term, Dr. Faber's automobile insurance was written by Vigilant Insurance Co.[5] (Vigilant) and included $5,000,000 of underinsured motorist bodily injury (UM) coverage.[6] It is alleged that, in late 2002, Dr. Faber inquired with McVay as to whether a different carrier could provide the same coverage for a reduced premium; it is further alleged that McVay reported to Dr. Faber that he could obtain the same coverage and lower his premium payments by contracting with Progressive Insurance for $250,000 in UM coverage and with Vigilant for an umbrella policy of $5,000,000 that also included UM coverage. However, during her deposition, McVay relayed a different version, stating that she informed Dr. Faber that the policies were different and that they would "come back and bite him

---

[3] A review of the record indicates that there is conflicting evidence as to when McVay initially became Dr. Faber's insurance agent. Accordingly, we refer to the date referenced in the complaint.

[4] Gordon was employed by Marketing Associates.

[5] Vigilant is a subsidiary of CHUBB.

[6] UM coverage provides protection if the insured is physically injured in a motor vehicle accident and the tortfeasor does not have adequate insurance coverage.

in the a\*\*." Nonetheless, Dr. Faber directed McVay to make this change, which reduced his premium by $4,951. The policy changes became effective on December 11, 2002. The umbrella policy with Vigilant provided for $5,000,000 in excess liability only,[7] but it did not include UM protection.

Although Dr. Faber was sent notice of these changes, which included succinct summaries of his coverages, it is undisputed that he failed to read the coverage update. Over the years, he also received notices that detailed his automobile insurance coverage, usually after he added or removed vehicles from his policies. Nonetheless, Dr. Faber testified at his deposition that he did not read these notices but filed them in a drawer because he relied on McVay's insurance expertise. Doctor Faber maintained that he assumed that his automobile policies provided maximum coverage for UM.

After McVay retired in May 2005, Dr. Faber retained M&S for his insurance needs, and Albright became his direct agent for personal insurance. He was informed by M&S that his policies would be reviewed and that he would be advised if additional coverage was necessary.[8] Doctor Faber again received notice as to the terms and coverage of his automobile insurance. During his deposition, Dr. Faber stated that he did not recall receiving notice of this cancellation and renewal.[9]

---

[7] Excess liability coverage provides protection if a claim is asserted against the insured and other insurance held by the insured is exhausted.

[8] Doctor Faber's automotive policy with Vigilant was technically canceled due to defendant CHUBB's internal procedure, but the new policy was renewed by the same carrier on February 22, 2006, and the coverage was identical.

[9] In 2007, Dr. Faber removed two vehicles from his automobile policy and added a new vehicle. A coverage update was sent to Dr. Faber, which declared that the Vigilant policy only provided excess liability coverage. As usual, Dr. Faber did not read the update.

On April 24, 2007, Dr. Faber was injured in a motor vehicle accident that occurred in Scottsdale, Arizona. After he exhausted the tortfeasor's insurance in the amount of $250,000, he attempted to submit a claim to Vigilant for his excess damages. He was informed that his Vigilant policy did not provide UM coverage, but only excess liability. Doctor Faber did recover $250,000 under his UM coverage with Progressive.

On August 6, 2009, plaintiffs filed an action against defendants, alleging that defendants negligently failed to adequately provide the insurance coverage that he expected. On March 14, 2014, McVay and Wickford moved for summary judgment on the basis, inter alia, that plaintiffs' claims were barred by the statute of limitations, § 9-1-14.1.[10] The plaintiffs responded that the discovery rule set forth in § 9-1-14.1(2) served to toll the limitation period because Dr. Faber could not reasonably have discovered the alleged insurance malpractice until he was injured in the collision and submitted a UM claim. Although Dr. Faber conceded that he received the coverage updates from defendants, plaintiffs argued that a reasonable person does not read his or her insurance policies. On April 22, 2014, the hearing justice granted summary judgment in favor of McVay and Wickford, finding that "a reasonable and diligent inquiry would have placed [plaintiffs] on notice of a claim in December of 2002[;] to have timely filed a complaint in compliance with * * * [§] 9-1-14.1, the plaintiffs would have had to have done so on or before December 11, 2005." Because the complaint was filed on August 6, 2009, plaintiffs' claims were held to be untimely. An order granting summary judgment was entered on May 21, 2014. Subsequently, on June 10, 2014, summary judgment was entered in favor of Gordon and Marketing Associates on the same grounds.

---

[10] General Laws 1956 § 9-1-14.1 provides, in pertinent part: "[A]n action for * * * insurance * * * malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action[.]"

On October 10, 2014, Albright and M&S also moved for summary judgment. Although plaintiffs initially objected to summary judgment, their objection was subsequently withdrawn, and a consent order entered dismissing plaintiffs' claims against Albright and M&S.[11]

Final judgment was entered on May 20, 2015. The plaintiffs timely appealed to this Court on June 1, 2015.

**Standard of Review**

"This Court reviews de novo a trial justice's decision granting summary judgment." Sola v. Leighton, 45 A.3d 502, 506 (R.I. 2012) (quoting Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d 417, 424 (R.I. 2009)). "[S]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." Cruz v. DaimlerChrysler Motors Corp., 66 A.3d 446, 451 (R.I. 2013) (quoting DeMaio v. Ciccone, 59 A.3d 125, 129 (R.I. 2013)). "Summary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" Sola, 45 A.3d at 506 (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005)). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." Id. (quoting National Refrigeration, Inc. v. Standen Contracting Co., 942 A.2d 968, 971 (R.I. 2008)).

**Analysis**

In Rhode Island, a cause of action for insurance malpractice "shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action[.]"

---

[11] The consent order makes explicit reference to the April 2014 order that dismissed plaintiffs' claims against the other defendants based on the statute of limitations.

Section 9-1-14.1. The plaintiffs do not argue that their claim was filed within this three-year limitation period. Rather, plaintiffs contend that the discovery rule set forth in § 9-1-14.1(2) serves to toll the limitation period in this case. In accordance with § 9-1-14.1(2), the limitation period does not begin to run until "the act or acts of malpractice should, in the exercise of reasonable diligence, have been discovered." The plaintiffs' argument is two-fold: First, plaintiffs maintain that the limitation period was tolled until Dr. Faber was injured in an automobile collision and sought UM benefits because he could not reasonably have discovered his claim for damages until he was denied coverage under the Vigilant policy. Second, plaintiffs aver that, to the extent that the discovery date hinges on notice of the wrongful conduct as opposed to the injury, Dr. Faber did not discover, nor should he have discovered, the wrongful conduct because a reasonable person does not read his or her insurance coverage updates. Before this Court, all defendants contend that Dr. Faber was provided clear and unambiguous notice as to his insurance coverage and that these numerous coverage updates put Dr. Faber on notice as to any alleged insurance malpractice. We agree with this contention.

In the medical malpractice context, this Court has declared, "[t]he discovery date is the date that the plaintiffs knew or should have known of the 'wrongful act' that is the basis of their lawsuit." Bustamante v. Oshiro, 64 A.3d 1200, 1204 (R.I. 2013) (quoting Hanson v. Singsen, 898 A.2d 1244, 1249 (R.I. 2006)). We see no reason to depart from this interpretation of the tolling provision in the context of insurance negligence, and we note that the limitation period for both causes of action is set forth in the same statute. Our decision in Burns v. Connecticut Mutual Life Insurance Co., 743 A.2d 566 (R.I. 2000) is instructive. In Burns, the plaintiff purchased a disability insurance policy from the defendants in 1988, but his application for the policy contained inaccurate information. Id. at 567. The plaintiff received notice of the policy

and was directed to "READ [HIS] POLICY CAREFULLY." Id. The policy stated that it was issued in consideration of the plaintiff's application, which was also attached to the policy. Id. Nonetheless, the plaintiff claimed that he was unaware of these inaccuracies and was not harmed until the defendants canceled his policy years later in 1993. Id. The plaintiff did not file a claim until June of 1993. Id. We affirmed the hearing justice's finding that the plaintiff's claims were time-barred, relying on Dionne v. Baute, 589 A.2d 833, 835 (R.I. 1991) for the proposition that a recipient of a relevant document is under an obligation to examine the document. Burns, 743 A.2d at 568. The focal point of the inquiry was not on when the plaintiff learned of the extent of his damages, but rather when the plaintiff discovered or should have discovered the liability causing conduct.

A careful reading of § 9-1-14.1(2) also supports the conclusion that the operative date of discovery is the date that a plaintiff discovers or in the exercise of reasonable diligence should have discovered the wrongful conduct of the tortfeasor. See In re Brown, 903 A.2d 147, 149 (R.I. 2006) ("It is a[] * * * fundamental maxim of statutory construction that statutory language should not be viewed in isolation."). Although the discovery rule references "injuries or damages" that may originally be undiscoverable, the rule also provides that the limitation period is tolled until the "malpractice should * * * have been discovered." Section 9-1-14.1(2).

This Court adheres to "the longstanding principle that 'statutes should not be construed to achieve meaningless or absurd results.'" McCain v. Town of North Providence ex rel. Lombardi, 41 A.3d 239, 243 (R.I. 2012) (quoting Ryan v. City of Providence, 11 A.3d 68, 71 (R.I. 2011)). Under the interpretation that plaintiffs urge upon the Court, an insured would be free to ignore deficiencies in his or her policies or coverage and be relieved from taking corrective action unless and until there was a denial of coverage. The discovery rule does not toll the limitation

period until the point when <u>damages</u> reasonably are discoverable, but when the <u>negligent</u> <u>conduct</u> is or should have been reasonably discovered. <u>See</u> <u>Bustamante</u>, 64 A.3d at 1207 ("The discovery rule does not require perfect crystallization of the nature and extent of the injury suffered or a clear-cut anchoring to the allegedly negligent conduct of a defendant.").

In the case at bar, the issue of possible insurance malpractice arose in late 2002, when, in an effort to reduce Dr. Faber's premiums, McVay changed carriers and failed to obtain additional UM insurance coverage for her client. Doctor Faber received a coverage update of the changes made to his policy, which indicated that the policy was effective on December 11, 2002. The summary indicates that two vehicles were deleted from the policy and one vehicle was added. This new coverage is described as "EXCESS LIABILITY ONLY." This coverage stands out even more because the previous coverage for the two deleted vehicles is listed as "VEHICLE LIABILITY, UMBI, UMPD." Doctor Faber acknowledged that he understood the difference between UM insurance and excess liability coverage. It is clear that the coverages in the policies were not identical. Nevertheless, Dr. Faber neglected to read this coverage update. The second allegation of malpractice occurred in February 2006 when Albright and M&S allegedly failed to obtain adequate UM coverage. Doctor Faber also received notice of this renewal, which included a summary of his coverage, but he failed to read this notice as well. Finally, Dr. Faber was sent coverage updates as he added and deleted vehicles from his policy that detailed the coverage that he bought. We are satisfied that, in the face of a multitude of opportunities, beginning in December 2002, Dr. Faber failed to discover the alleged insurance malpractice.

The plaintiffs also urge this Court to hold, as a matter of law, that a reasonable person exercising reasonable diligence does not read his or her coverage updates. We are unpersuaded by this contention. Doctor Faber was not charged with reading every iteration of insurance

jargon in his policies. In fact, we have recognized that "the detailed provisions of insurance contracts are seldom read by the consumer"; therefore, "[t]he contents of the declarations sheet is of paramount importance." Mallane v. Holyoke Mutual Insurance Co. in Salem, 658 A.2d 18, 20 (R.I. 1995) (quoting Sentry Insurance Co. v. Grenga, 556 A.2d 998, 1000 (R.I. 1989)). Doctor Faber was bound to act as a reasonably diligent insured—to at least peruse a personalized summary of the policy's coverage. See Sentry Insurance Co., 556 A.2d at 1000 ("The ordinary insured would assume that such a personalized document would contain any significant limitations on coverage."). We therefore conclude that Dr. Faber failed to exercise the necessary reasonable diligence that was required of him.

Doctor Faber repeatedly stated that he relied on defendants' insurance expertise when he changed his automobile policies. However, "[t]o accept [Dr. Faber's] present assertions of assuming the coverage was the same could leave an insurer exposed to whatever risks an insured could later persuade a jury he had been thinking were covered—so long as he had been careful not to read the policy." Sutherland v. NN Investors Life Insurance Co., 897 F.2d 593, 596 (1st Cir. 1990). Cf. Manchester v. Pereira, 926 A.2d 1005, 1012 (R.I. 2007) ("[I]t has long been a settled principle that 'a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents.'" (quoting F.D. McKendall Lumber Co. v. Kalian, 425 A.2d 515, 518 (R.I. 1981))); Murray v. Cunard S.S. Co., 139 N.E. 226, 228 (N.Y. App. Ct. 1923) (Cardozo, J.) ("[One] who omits to read takes the risk of omission."). Moreover, we note that the changes in Dr. Faber's policies reduced his premium by $4,951, not an insignificant savings. Such a substantial reduction should have likewise alerted this busy and successful professional that something was amiss, such that he would have read the declarations page or contacted his agent. Accordingly, we are of the

opinion that the Superior Court justice did not err in concluding as a matter of law that a reasonable person would have, at a minimum, perused the summary pages of the coverage update to ensure that the policy changes were correct and adequate, especially in light of the sizable reduction in the premium.

Accordingly, the operative date for the commencement of the running of the statute of limitations certainly was no later than December 11, 2002, the date listed on the first coverage update. Because the complaint was filed nearly seven years later, it was untimely. As a result, plaintiffs' claims against McVay, Wickford, Gordon, and Marketing Associates were untimely and summary judgment was appropriate.

We also conclude that the plaintiffs' claims against Albright and M&S equally are untimely. Doctor Faber received notice of the renewed automobile policy, effective February 22, 2006, and the limitation period commenced on that date and ran until February 23, 2009,[12] almost six months before the complaint was filed. We note that Albright and M&S also argue that the claims against them were dismissed pursuant to a consent judgment that may not be set aside absent agreement of the parties. Having concluded that the statute of limitations is dispositive of this appeal, we need not address the consent judgment.

### Conclusion

For the reasons articulated herein, we affirm the judgment of the Superior Court. The papers may be remanded to the Superior Court.

---

[12] February 22, 2009 was a Sunday.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Charles S. Faber et al. v. Francine A. McVay et al. |
| **Case Number** | No. 2015-337-Appeal.<br>(PC 09-4512) |
| **Date Opinion Filed** | March 8, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Joseph A. Montalbano |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Stephen J. Brouillard, Esq.<br>Theresa L. Sousa, Esq. |
| | For Defendants:<br><br>Taylor J. Hills, Esq.<br>Frederick E. Connelly, Jr., Esq.<br>Syd A. Saloman, Esq.<br>Timothy J. Robenhymer, Esq.<br>Christopher van Tienhoven, Esq.<br>Christopher B. Weldon, *Pro Hac Vice* |