# Illinois Official Reports

## Supreme Court

---

### *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556

---

| | |
|---|---|
| Caption in Supreme Court: | AMERICAN FAMILY MUTUAL INSURANCE COMPANY v. WALTER KROP *et al.*, Appellees (Andy Varga *et al.*, Appellants). |
| Docket No. | 122556 |
| Filed | October 18, 2018 |
| Rehearing denied | November 26, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Stephen R. Swofford and Kent J. Cummings, of Hinshaw & Culbertson LLP, of Chicago, for appellants. |
| | Kristin L. Matej and Diana C. Guler, of Taylor Miller LLC, of Chicago, for appellees. |
| | Richard M. Waris, Matthew J. Egan, and Brendan J. Nelligan, of Pretzel & Stouffer Chtrd., of Chicago, for *amicus curiae* Independent Insurance Agents of Illinois. |

Robert E. Elworth, of HeplerBroom, LLC, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Justices

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Burke, and Neville concurred in the judgment and opinion.

Justice Theis dissented, with opinion, joined by Justice Kilbride.

Justices Kilbride and Theis dissented upon denial of rehearing, without opinion.

## OPINION

¶ 1     When customers allege that their insurance company negligently sold them a deficient insurance policy, section 13-214.4 of the Code of Civil Procedure (Code) gives those customers a two-year deadline to file any lawsuits. 735 ILCS 5/13-214.4 (West 2014). In this case we are asked to determine when the cause of action accrues in such cases. American Family Mutual Insurance Company (American Family) filed a declaratory judgment action against Walter and Lisa Krop, contending their homeowner's insurance policy did not cover a tort action pending against their son. The Krops filed a counterclaim against American Family and a third-party claim against Andrew Varga, an insurance agent for American Family. Varga argued at the circuit court that the cause of action for negligently selling a deficient policy accrues as soon as customers purchase their policy. The Krops claimed that the cause of action does not accrue until the insurer refuses to provide coverage. Agreeing with Varga, the circuit court dismissed the Krops' claims against Varga and American Family as untimely. The appellate court reversed. 2017 IL App (1st) 161071. Varga petitioned for leave to appeal, and we allowed the petition. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016).

¶ 2     We hold that, when customers have the opportunity to read their insurance policy and can reasonably be expected to understand its terms, the cause of action for negligent failure to procure insurance accrues as soon as the customers receive the policy. Here the Krops filed their complaint over two years after they received their American Family policy, and they did not plead facts that would support any recognized exception to the expectation that customers will read the policy and understand its terms, so their claim was untimely. We reverse the appellate court's decision.

¶ 3                              BACKGROUND

¶ 4     In early 2012 Walter and Lisa Krop asked Andrew Varga to provide them with a new homeowner's insurance policy from American Family. Although the details of their interactions with Varga are contested, the Krops claim that they gave him a copy of their old policy with Travelers insurance company and requested a new policy that was "equal to the

coverages provided by Travelers." They further allege that Varga promised to provide them with an American Family policy that was equal to or better than the Travelers policy for a similar price. American Family and the Krops agreed to a policy, which American Family issued on March 21, 2012. The Krops renewed this policy each of the next three years.

¶ 5    In mid-2014, Mary Andreolas sued the Krops, seeking damages for defamation, invasion of privacy, and intentional infliction of emotional distress. The specifics of the lawsuit are not relevant to this decision, except that on August 20, 2014, American Family denied the Krops coverage for Andreolas's suit.

¶ 6    Soon thereafter American Family filed a declaratory judgment action in the circuit court of Cook County to justify its denial of coverage. The complaint cited portions of the Krops' policy that American Family argued excluded the alleged torts from coverage. In a section of the policy titled "LIABILITY COVERAGES—SECTION II," American Family had promised:

> "We will pay, up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy."

The policy's definition of "bodily injury" excluded "emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person." Finally, the policy defined "occurrence" as "an accident, including exposure to conditions, which results during the policy period in: a. bodily injury; or b. property damage."

¶ 7    American Family claimed that this policy did not cover liability for the alleged defamation, invasion of privacy, or intentional infliction of emotional distress because Andreolas did not seek damages for any bodily injury. Additionally, American Family argued that, because the policy only covered "damage caused by an occurrence" and an "occurrence" requires an "accident," the policy did not cover the Krops' liability for the intentional conduct that Andreolas alleged.

¶ 8    On September 3, 2015, the Krops responded with a counterclaim against American Family and a third-party complaint against Varga. They alleged that Varga negligently failed to provide them with an insurance policy equal to their Travelers policy, as they had requested, and that American Family was vicariously liable for its agent's negligence. The Travelers policy had covered liability for "personal injury" as well as bodily and property injuries. Although both policies extended coverage to injuries caused by "occurrences," the Travelers policy defined "occurrence" to include an "offense *** that results in 'personal injury.' " The American Family policy did not include offenses causing personal injury in its definition of "occurrence." According to the Krops, Varga failed to exercise ordinary care, and this failure caused the Krops to lack coverage for personal liability in Andreolas's lawsuit.

¶ 9    Varga and American Family both moved to dismiss the Krops' claims under sections 2-615 and 2-619 of the Code. 735 ILCS 5/2-615, 2-619 (West 2014). Section 13-214.4 of the Code creates a two-year statute of limitations for claims against insurance producers. *Id.* § 13-214.4. Varga and American Family argued that this two-year period began when the Krops first received their policy in March 2012, so their claims were untimely after March 2014.

¶ 10    The circuit court dismissed the Krops' counterclaims under section 2-619 of the Code. Relying on *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, the court found that the two-year limitations period for claims against insurance producers begins as

soon as the insurer issues the policy. It rejected the Krops' argument that they could not have known about the defect in their policy, reasoning instead that insurance customers have an obligation to read their policies and understand the terms. Because American Family issued the Krops' policy on March 21, 2012, the court concluded that all claims after March 21, 2014, were untimely. The Krops filed their counterclaims and third-party complaint on September 22, 2015, so the circuit court granted Varga's and American Family's motions to dismiss.

¶ 11     The appellate court reversed the dismissal. 2017 IL App (1st) 161071. It stated that other Illinois cases have distinguished between lawsuits alleging negligence by an insurer, like American Family, and those alleging negligence by an agent, like Varga. *Id.* ¶ 34 (citing *Perelman v. Fisher*, 298 Ill. App. 3d 1007 (1998)). Based on those decisions, the appellate court found that insurance agents owe their customers a fiduciary duty and that this duty is more significant than the customers' obligation to read their policy. The court concluded that the limitations period did not begin to run when the policy was issued in March 2012. Instead, the "discovery rule" delayed the start of the limitations period until the Krops knew or should have known of the injury. Finally, the court found that the Krops reasonably should have known of the injury only when American Family denied them coverage in August 2014 and that the Krops' claims in September 2015 were timely. *Id.* ¶ 36. Varga petitioned this court for leave to appeal.[1] We allowed Varga's petition. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016).

¶ 12                                          ANALYSIS

¶ 13     The circuit court granted Varga's section 2-619 motion, and we review a dismissal under section 2-619 *de novo*. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). A section 2-619 motion admits the legal sufficiency of the complaint but asserts another affirmative matter that defeats the claim. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). Section 2-619(a)(5) authorizes a court to dismiss a complaint that was filed outside of the relevant limitations period. 735 ILCS 5/2-619(a)(5) (West 2014). When reviewing a dismissal under section 2-619, this court will affirm only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). It also admits as true all well-pleaded facts and all reasonable inferences that can be drawn from them. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). We construe those facts in the light most favorable to the nonmoving party. *Id.*

¶ 14                 A. Earliest Accrual Date for Negligent Failure to Procure Insurance

¶ 15     The Krops' suit is premised on Varga's alleged failure to satisfy his statutory obligation in procuring an American Family insurance contract for the Krops. Section 2-2201(a) of the Code states that "[a]n insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 ILCS 5/2-2201(a) (West 2014). The section does not define "insurance producer," but we have held that this term includes "captive agents" like Varga, who represent a particular insurance company and sell that company's policies to

---

[1]American Family subsequently moved to join and adopt Varga's petition for leave to appeal, his appellate brief, and his reply brief before this court, all of which we allowed.

customers. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶¶ 19, 23. The Krops alleged that Varga breached the insurance producer's duty of ordinary care.

¶ 16    Section 13-214.4 of the Code is the statute of limitations for such claims. It provides that:

"All causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13-214.4 (West 2014).

¶ 17    Although this statute clearly bars a claim under section 2-2201(a) filed more than two years after the cause of action accrues, it does not define what constitutes accrual. To fill this gap, this court has explained that, for tort claims,

"the cause of action usually accrues when the plaintiff suffers injury. [Citations.] For contract actions and torts arising out of contractual relationships, though, the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages. [Citations.] The reason for this distinction is the concern that plaintiffs will delay bringing suit after a contract is breached in order to increase damages." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (1995).

¶ 18    Illinois courts have typically treated allegations of negligence in relation to insurance policies, such as the negligent procurement claim here, as torts arising out of contractual relationships. See, *e.g.*, *Hoover*, 2012 IL App (1st) 110939, ¶ 52; *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 565 (2009); *Indiana Insurance Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300, 303-04 (2001). In *Kanter v. Deitelbaum*, 271 Ill. App. 3d 750, 755 (1995), the appellate court characterized this cause of action as "extracontractual." Unlike other torts, the earliest date of accrual for torts arising out of contractual relationships is the date of the breach of the duty or the contract, not the date of the damages. *Indiana Insurance Co.*, 324 Ill. App. 3d at 304; *Hoover*, 2012 IL App (1st) 110939, ¶ 52; see also *Hermitage Corp.*, 166 Ill. 2d at 77.

¶ 19    Here the date of the alleged breach was March 21, 2012. On this day Varga procured for the Krops an insurance policy that did not cover defamation, invasion of privacy, and intentional infliction of emotional distress, which the Krops alleged they had asked Varga to provide.

¶ 20                              B. The Discovery Rule

¶ 21    The Krops urge the court to apply the "discovery rule." This rule delays the start of the limitations period until the claimant knew or reasonably should have known of the injury and that the injury was wrongfully caused. *Hermitage Corp.*, 166 Ill. 2d at 77; *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981). Illinois courts have applied this rule in certain circumstances to alleviate the harsh consequences of statutes of limitations. *Knox College*, 88 Ill. 2d at 414. When a complainant should have discovered an injury is a question of fact, but this court can determine when the limitations period began if the facts are undisputed and only one answer is reasonable. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 250 (1994).

¶ 22    Many Illinois cases have found that insurance customers should know the specifics of their policy as soon as they purchase it. The appellate court has imposed on insurance customers an

obligation to read their policies and understand the terms. See, *e.g.*, *RVP, LLC v. Advantage Insurance Services, Inc.*, 2017 IL App (3d) 160276, ¶ 32; *Garrick v. Mesirow Financial Holdings, Inc.*, 2013 IL App (1st) 122228, ¶ 49; *Perelman*, 298 Ill. App. 3d at 1011. In *Hoover*, 2012 IL App (1st) 110939, the appellate court concluded that the plaintiffs should have known the specifics of their policy when they first purchased it. The Hoovers had met with their insurance agent about adding a section to their existing policy that would cover the cost to replace their home and possessions if they were damaged. After an explosion destroyed their home, the insurer covered less than 80% of the replacement costs because the new section in the Hoovers' policy specified this liability limit. *Id.* ¶ 17. When the Hoovers sued for negligence, the insurer claimed that the Hoovers should have known about the liability limit more than two years earlier and the suit was untimely. The court agreed with the insurer that the Hoovers could have read the policy and known about the liability limit as soon as they received the new policy. *Id.* ¶ 60.

¶ 23    The Krops ask this court to disregard these precedents and follow the appellate court's reasoning. The appellate court here applied the discovery rule and delayed the start of the limitations period. *Krop*, 2017 IL App (1st) 161071, ¶ 16. It cited two appellate court cases addressing the statute of limitations for negligent failure to procure insurance: *Broadnax v. Morrow*, 326 Ill. App. 3d 1074 (2002), and *Perelman*, 298 Ill. App. 3d 1007. *Krop*, 2017 IL App (1st) 161071, ¶¶ 16, 20. In each of these cases, an insurance customer sued an insurance broker claiming negligent failure to procure the requested insurance policy. Unlike "captive agents" who work for one insurance company exclusively, insurance brokers work for their customers and provide insurance policies from multiple companies. *Skaperdas*, 2015 IL 117021, ¶ 19. The *Broadnax* and *Perelman* courts found that insurance brokers owed customers a fiduciary duty. This duty exists in certain relationships where "one party places trust in another so that the latter gains superiority and influence over the former." *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 313 (2002). In both *Broadnax* and *Perelman*, the appellate court found that this fiduciary duty imposed a greater obligation on insurance brokers to ensure that their customers understood the specifics of their new policies. *Broadnax*, 326 Ill. App. 3d at 1079; *Perelman*, 298 Ill. App. 3d at 1011.

¶ 24    Following *Broadnax* and *Perelman*, the appellate court concluded that barring a negligence claim against any insurance producer regardless of when the customer discovered the injury would be inconsistent with the fiduciary duty. 2017 IL App (1st) 161071, ¶¶ 16, 20, 34-35. It applied the discovery rule to delay the start of the limitations period until the Krops learned of the injury and that it was wrongfully caused, which it determined was when American Family denied the Krops coverage in August 2014. *Id.* ¶ 35.

¶ 25    In addition to *Broadnax* and *Perelman*, the Krops and the appellate court relied on *Scottsdale Insurance Co. v. Lakeside Community Committee*, 2016 IL App (1st) 141845. In *Scottsdale*, the appellate court found that the cause of action accrued when the insurer first denied coverage and not when the insured first purchased the policy. *Id.* ¶ 2. *Scottsdale* arose after a young child died while Lakeside Community Committee (Lakeside) was providing child welfare services to the child and her mother. *Id.* ¶ 1. When the public guardian sued Lakeside for wrongful death, Lakeside's insurer, Scottsdale, denied coverage. *Id.* ¶ 2. Lakeside assigned its own claims to the public guardian, which alleged that Scottsdale's agent negligently failed to procure the insurance policy that Lakeside had requested. *Id.* In rejecting Scottsdale's argument that the statute of limitations barred the claim, the appellate court agreed

with *Broadnax* that Lakeside would not have known the extent of its coverage until the insurer denied coverage. *Id.* ¶¶ 31, 36, 38.

¶ 26    The Krops' reliance on *Broadnax* and *Perelman* is misplaced. See also *id.* ¶¶ 29-31, 38; *State Farm Fire & Casualty Co.*, 394 Ill. App. 3d at 565-66; *General Casualty Co. of Illinois v. Carroll Tiling Service, Inc.*, 342 Ill. App. 3d 883, 899-900 (2003). The court in *Broadnax* based its decision on the insurance broker's fiduciary duty, but insurance agents do not owe customers a fiduciary duty. At the time of the facts in *Broadnax* and *Perelman*, such a duty existed for insurance brokers, who procured policies for customers but did not work for any one insurance company. *Skaperdas*, 2015 IL 117021 ¶¶ 19, 22; *Broadnax*, 326 Ill. App. 3d at 1079; *Perelman*, 298 Ill. App. 3d at 1011. In contrast, insurance agents worked for a particular company and owed obligations to their employer as well as their customer. *Skaperdas*, 2015 IL 117021, ¶¶ 19, 22.

¶ 27    In 1997, the General Assembly enacted the Insurance Placement Liability Act. Section 2-2201 provides:

> "No cause of action brought by any person or entity against any insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer, registered firm, or limited insurance representative to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer, registered firm, or limited insurance representative of any money that was received as premiums, as a premium deposit, or as payment of a claim." Pub. Act 82-280 (eff. Jan. 1, 1997) (enacting 735 ILCS 5/2-2201(b)).

¶ 28    This statute prevents any insurance producer from being held to the fiduciary standard, except in a narrow set of circumstances not relevant to this case. 735 ILCS 5/2-2201(b) (West 2014). Instead insurance producers have only a general duty to exercise ordinary care. *Id.* § 2-2201(a). In *Skaperdas*, this court held that the general duty applies to both agents and brokers. 2015 IL 117021, ¶¶ 35, 37. This statute makes clear that Varga owed no fiduciary obligations to the Krops.

¶ 29    Because a claim for negligent failure to procure insurance does not involve a fiduciary duty, insurance customers' obligation to read their policies controls. See *RVP, LLC*, 2017 IL App (3d) 160276, ¶ 32; *Hoover*, 2012 IL App (1st) 110939, ¶ 60. Customers generally know their own goals better than their insurance agent does, but determining if a policy achieves those goals will be difficult when customers do not read the policy. Expecting customers to read their policies and understand the terms incentivizes them to act in good faith to purchase the policy they actually want, rather than to delay raising an issue until after the insurer has already denied coverage. See *Hermitage Corp.*, 166 Ill. 2d at 77 (noting that cause of action for contract actions accrues at moment of breach, not injury). Moreover, insurance customers frequently maintain the same insurance policy for years, perhaps decades, at a time. If the cause of action did not accrue until the insurance producer notified the customer of an uninsured liability, insurance customers would benefit from their policy throughout the intervening period, while evidence potentially relevant to the insurer's defense would be at risk of deterioration. Therefore, because insurance customers can read their policies and learn of

any defects, the discovery rule typically will not delay the start of the two-year limitations period for negligent failure to procure insurance.

¶ 30    Decisions of other state supreme courts support this conclusion. The Rhode Island, Indiana, Mississippi, Delaware, and Maine Supreme Courts have agreed that insurance customers can learn the extent of their coverage by reading their policies. *Faber v. McVay*, 155 A.3d 153, 158 (R.I. 2017); *Groce v. American Family Mutual Insurance Co.*, 5 N.E.3d 1154 (Ind. 2014); *Filip v. Block*, 879 N.E.2d 1076, 1084 (Ind. 2008); *Oaks v. Sellers*, 2006-IA-00005-SCT (¶ 23) (Miss. 2007); *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 835 (Del. 1995); *Chiapetta v. Clark Associates*, 521 A.2d 697, 700 (Me. 1987).

¶ 31    Admittedly, the courts of other states are far from unanimous on when the cause of action accrues in such cases and when insurance customers should discover their potential claims. See *Stephens v. Worden Insurance Agency*, *LLC*, 859 N.W.2d 723, 732-33 (Mich. Ct. App. 2014) (cataloguing different approaches to the accrual date); *M.S.S. Construction Corp. v. Century Surety Co.*, No. 15 Civ. 2801(ER), 2015 WL 6516861, at *12 (S.D.N.Y. Oct. 28, 2015) (discussing conflict within New York state courts over whether the cause of action accrued at the time of the breach or when the insurer first denied coverage).

¶ 32    A few courts have taken the Krops' position that the discovery rule delays the limitations period until after the insurance customers learn that they have incurred expenses from an uninsured liability. *Gudenau & Co. v. Sweeney Insurance, Inc.*, 736 P.2d 763, 767 (Alaska 1987); *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 560 N.E.2d 122, 124 (Mass. App. Ct. 1990); *American Home Assurance Co. v. Osborn*, 422 A.2d 8, 16 (Md. Ct. Spec. App. 1980); *Kelly v. H.C. Kerstetter Co.*, No. 696 MDA 2015, 2016 WL 1728686, at *4-5 (Pa. Super. Ct. Apr. 27, 2016).

¶ 33    Some state courts also have found that the cause of action accrues when the insured incurs losses because of an uninsured liability, but they reached this conclusion without applying a discovery rule. See, *e.g.*, *Blumberg v. USAA Casualty Insurance Co.*, 790 So. 2d 1061, 1065 (Fla. 2001); *Hickox v. Stover*, 551 So. 2d 259, 264 (Ala. 1989); *Chiapetta*, 521 A.2d at 700; *Spurlin v. Paul Brown Agency, Inc.*, 454 P.2d 963 (N.M. 1969); see also, *LGR Realty, Inc. v. Frank & London Insurance Agency*, 152 Ohio St. 3d 517, 2018-Ohio-334, 98 N.E.3d 241, ¶ 40 (DeWine, J., concurring, joined by O'Connor, C.J.) (discussing ambiguities in Ohio law but noting Ohio cases holding that the discovery rule does not apply in any professional negligence suit); *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514-15 (Tex. 1998). But *cf. Rice v. Louis A. Williams & Associates, Inc.*, 86 S.W.3d 329, 339-40 (Tex. Ct. App. 2002).

¶ 34    These courts relied on two key premises: that the injury for which the plaintiffs sought a remedy was a liability that their policy did not cover and that the plaintiffs could not assert their claim until they encountered such a liability. See, *e.g.*, *Gudenau & Co.*, 736 P.2d at 766; *Kelly*, 2016 WL 1728686, at *4; *American Home Assurance Co.*, 422 A.2d at 16 (explaining that the cause of action cannot accrue until there is some "legal harm"). The Alaska Supreme Court's decision in *Austin v. Fulton Insurance Co.*, 444 P.2d 536 (Alaska 1968), is characteristic of this approach. *Austin* explained that the cause of action for a tort cannot accrue until the tort is complete, that the tort is not complete until the harm occurs, and that the relevant harm was the uninsured liability, not simply the defective policy. *Id.* at 539. This was the background context to which the Alaska Supreme Court applied the discovery rule in

*Gudenau & Co.*, 736 P.2d at 766; see also *Pichowicz v. Watson Insurance Agency Inc.*, 768 A.2d 1048 (N.H. 2001); *International Mobiles Corp.*, 560 N.E.2d at 124; *Williams v. Hilb, Rogal & Hobbs Insurance Services of California, Inc.*, 98 Cal. Rptr. 3d 910, 924 (Ct. App. 2009).

¶ 35    We reject these premises and instead agree with the Indiana and Delaware courts. *Filip*, 879 N.E.2d at 1076; *Kaufman*, 603 A.2d at 834. Because Illinois treats negligent failure to procure insurance as a tort arising out of a contract, "the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages." *Hermitage Corp.*, 166 Ill. 2d at 77. Neither party disputes that the *breach* occurred when Varga delivered the allegedly nonconforming policy. See *Easterly v. Metropolitan Life Insurance Co.*, No. 2006-CA-001580-MR, 2009 WL 350595, at *6 (Ky. Ct. App. Feb. 13, 2009). Although the discovery rule delays the start of the limitations period until the plaintiff should discover the *injury*, we find that insurance customers are injured as soon as an insurance producer delivers a policy that does not conform to the customers' request. The Krops' alleged injuries included not only their uninsured liability in Andreolas's lawsuit but also their lack of coverage between the purchase of the policy in 2012 and the lawsuit in 2014. The damages may have increased when Andreolas sued, but the alleged injury began when American Family and Varga provided the Krops with an insurance policy that did not conform to their request. *Filip*, 879 N.E.2d at 1083; *Kaufman*, 603 A.2d at 834; see also Restatement (Second) of Torts § 7 (1965) (distinguishing between a "harm," which requires a loss or detriment, and the broader "injury," which may exist without any harm occurring); *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171 (1981). The cause of action accrues as soon as the plaintiff should discover some injury, even if the full extent of the injury is not evident. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 364, 367 (1995).

¶ 36    Although customers should read their policy and discover any defects, we recognize that there will be a narrow set of cases in which the policyholder reasonably could not be expected to learn the extent of coverage simply by reading the policy. In some cases the insurance policies may contain contradictory provisions or fail to define key terms. In others the circumstances that give rise to the liability may be so unexpected that the typical customer should not be expected to anticipate how the policy applies. For example, the highly unusual circumstances of *Scottsdale*, involving the murder of a young child in the custody of the Department of Children and Family Services, were not likely imagined by Lakeside when it purchased the policy.[2] *Scottsdale*, 2016 IL App (1st) 141845, ¶¶ 36-37; see also *Groce*, 5 N.E.3d at 1159 (finding that although " 'reasonable reliance upon an agent's representations can override an insured's duty to read the policy,' " the insurance agent's statement that he would have the agreement " 'written up' " was not a sufficient representation to absolve the customers of the obligation to read their own policy (quoting *Filip*, 879 N.E.2d at 1084)).

¶ 37    The alleged facts of this case do not present such an exceptional circumstance where a customer reasonably should not be expected to understand the terms of the policy. The American Family policy covered legal liability only if it resulted from "bodily injury or property damage." The first page of the policy includes a "DEFINITIONS" section that

---

[2]Although the *Scottsdale* court erred by relying on *Broadnax*, its reasoning based on *Indiana Insurance Co.* and for distinguishing *Hoover* remains persuasive. *Scottsdale*, 2016 IL App (1st) 141845, ¶¶ 36-37.

explicitly states that "[b]odily [i]njury does not include \*\*\* emotional or mental distress, mental anguish, mental injury, or any similar injury unless it arises out of actual bodily harm to the person." This clearly differs from the Travelers policy, which states that Travelers would provide coverage "for damages because of 'bodily injury,' 'personal injury,' or 'property damage.' " The Travelers policy defines "personal injury" to include "[l]ibel, slander or defamation of character" and "[i]nvasion of privacy." The difference between the two policies was apparent. These details closely resemble the facts of *Hoover*, where the 80% liability limit was clearly expressed on the face of the policy. *Hoover*, 2012 IL App (1st) 110939, ¶¶ 58-61.

¶ 38     The Krops have not pleaded facts showing that they could not have read their American Family policy and understood its terms, so the cause of action accrued when they first purchased their policy. The parties agree that American Family issued the policy on March 21, 2012.[3] The Krops do not claim that they never received the policy or had no copy available to them. Because they were obligated to read the policy and understand its terms, this is also the earliest date when they reasonably should have known that Varga had not provided them with an American Family policy that covered all the same liabilities as the Travelers policy. Their cause of action against Varga for negligent failure to procure insurance accrued on March 21, 2012, and the two-year limitations period ended on March 21, 2014. Because the Krops brought their claim on September 3, 2015, that claim was untimely.

¶ 39                                                            CONCLUSION

¶ 40     The Krops' claim was barred by the limitations period for claims against insurance producers in section 13-214.4 of the Code. We reverse the appellate court's decision and affirm the circuit court's order granting Varga's and American Family's motions to dismiss under section 2-619 of the Code.

¶ 41     Appellate court judgment reversed.

¶ 42     Circuit court judgment affirmed.

¶ 43     JUSTICE THEIS, dissenting:

¶ 44     The threshold question in this case is the proper characterization of the third-party action filed by the Krops against Andrew Varga, an American Family agent, under section 2-2201 of the Code (735 ILCS 5/2-2201 (West 2014)). When this action is properly characterized as a negligence action, it is evident that the cause of action accrued upon American Family's denial of the Krops' claim for coverage. Thus, when the Krops filed their third-party complaint for negligent procurement, the two-year limitations period had not run. Accordingly, I would affirm the appellate court's judgment that reversed the trial court's dismissal of the Krops' cause of action as untimely.

_____

[3]The exact date that the Krops received a copy of the American Family policy does not appear in the record. However, the Krops do not dispute March 21, 2012, as the date that American Family issued the policy, and they do not suggest that they received a copy much later. Even if March 21, 2012, is not the exact date that they had the opportunity to read the policy, they had the opportunity soon after. Whatever exact date the cause of action accrued in spring 2012, the suit in September 2015 was certainly more than two years after that date.

¶ 45 The two-year statute of limitations in section 13-214.4 of the Code encompasses claims by an insured against an insurance producer, including Varga. That section provides that "[a]ll causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer *** concerning the *** procurement *** of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13-214.4 (West 2014).

¶ 46 The accrual date depends upon how the cause of action is characterized. Historically, liability for the failure to procure insurance arose under various theories of tort and contract, and it often depended on the distinctions between insurance brokers and captive insurance agents. In these cases, depending upon the relationship, liability was said to be based on the agreement between the prospective insured and the insurance broker to procure a certain policy, based on a fiduciary relationship with its principal, or based on other negligence principles. See, *e.g.*, *Scarsdale Villas Associates, Ltd. v. Korman Associates Insurance Agency, Inc.*, 178 Ill. App. 3d 261, 264 (1988) (action for breach of a contract to procure insurance and negligent misrepresentation); *Gothberg v. Nemerovski*, 58 Ill. App. 2d 372 (1965) (action for breach of a contract to procure); *Black v. Illinois Fair Plan Ass'n*, 87 Ill. App. 3d 1106, 1110 (1980) (action for negligent procurement arising from a breach of fiduciary duties); *Talbot v. Country Life Insurance Co.*, 8 Ill. App. 3d 1062, 1065 (1973) (action for negligent procurement based on an affirmative undertaking to perform a service to another to either provide the desired coverage or notify the applicant of the rejection of the risk "so that he may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere").

¶ 47 In 1996, the General Assembly enacted section 2-2201 of the Code, which addressed the liability of insurance producers in relation to the procurement of insurance. See Pub. Act 89-638, § 5 (eff. Jan. 1, 1997) (adding 735 ILCS 5/2-2201). Section 2-2201(a) imposes negligence liability on an insurance producer, including both brokers and captive agents, by imposing a duty to "exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured." 735 ILCS 5/2-2201(a) (West 2014); *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 25. Although the statute removed the common-law basis for distinguishing between insurance brokers and insurance agents, and limited the scope of breach of fiduciary duty claims, the statute does not release an insurance producer from liability for negligence (735 ILCS 5/2-2201(d) (West 2014)), and subsection (a) specifically provides for a cause of action in negligence (*id.* § 2-2201(a)); *Skaperdas*, 2015 IL 117021, ¶ 24.

¶ 48 Here, the Krops alleged that Varga was negligent in failing to procure the insurance coverage that they requested pursuant to section 2-2201 of the Code. As we explained in *Skaperdas*, the statutory duty of ordinary care arising from subsection (a) arises once coverage is " 'requested by the insured or proposed insured.' " *Skaperdas*, 2015 IL 117021, ¶¶ 37, 42 (quoting 735 ILCS 5/2-2201(a) (West 2010)). Once such coverage is requested, insurance producers "exercise ordinary care and skill in responding to the request, 'either by providing the desirable coverage or by notifying the applicant of the rejection of the risk.' " *Id.* ¶ 37 (quoting *Talbot*, 8 Ill. App. 3d at 1065). If an insurance producer cannot offer the coverage requested, it may satisfy the statutory duty by notifying the customer to look elsewhere for the requested coverage. *Id.* ¶ 39. We further explained in *Skaperdas* that the duty does not depend upon either a contractual relationship or a fiduciary one. *Id.* ¶¶ 25-26.

¶ 49    As a result, where the statute specifically provides for a negligence action, the duty as defined in section 2-2201(a) does not depend upon any contractual relationship, and the Krops do not seek recovery for mere negligent performance of a contractual duty, the proper characterization of their claim is an ordinary negligence action, which is a tort-based claim. See, *e.g.*, *Melrose Park Sundries, Inc. v. Carlini*, 399 Ill. App. 3d 915, 919 (2010) (characterizing and analyzing the claim against an insurance producer under section 2-2201 as a negligence action); *Mercola v. Abdou*, 223 F. Supp. 3d 720, 728-29 (N.D. Ill. 2016) (finding that the provisions of section 2-2201 sound in the language of tort).

¶ 50    Next, we must consider when a cause of action accrues for a negligence claim. Generally, we have recognized that tort actions have been treated differently than contract actions. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (1995). Tort actions generally accrue at the time of injury. *Id.* (citing *West American Insurance Co. v. Sal E. Lobianco & Son Co.*, 69 Ill. 2d 126, 132 (1977)). In *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 20, this court explained that a cause of action "accrues" when "facts exist that authorize the bringing of a cause of action. "Thus, a tort cause of action accrues when all of its elements are present, *i.e.*, duty, breach, and resulting injury or damage." *Id.* (citing *Brucker v. Mercola*, 227 Ill. 2d 502, 542 (2007)); see also *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 266 (2001) (statute of limitations begins to run when the plaintiff "has the right to invoke the aid of the court to enforce his remedy"); *Lobianco*, 69 Ill. 2d at 129-30 (cause of action based on tort accrues only when all the elements are present: duty, breach, and resulting injury or damage).

¶ 51    Pursuant to our discovery rule, the limitations period is tolled and begins to commence when the plaintiff knew, or reasonably should have known, that the injury occurred and that it was wrongfully caused. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414 (1981). At that point, the injured person possesses sufficient information concerning his injury and its cause to put a reasonable person on notice to make additional inquiries. *Id.* at 415. Neither party disputes the applicability of the discovery rule to this cause of action.

¶ 52    Thus, as applied in this context, before the tort could become actionable and before the limitations period could begin to run, there must be an injury to the plaintiff as a consequence of the insurance producer's alleged negligence that could serve as a basis for the recovery of damages. The alleged injury arises when the plaintiff sustains a loss for which an insurance claim is not covered but would have been covered if the requested insurance had been properly procured or if the plaintiff had been timely notified of the rejection of the risk. Under the discovery rule, in this case, at the time the Krops received the denial of coverage letter from American Family in August 2014, they knew or should have known of their injury and that Varga might have been negligent.

¶ 53    Although the Krops were not required to know the "full extent" of the injury before the statute of limitations was triggered (*Golla v. General Motors Corp.*, 167 Ill. 2d 353, 364 (1995)), prior to the denial of coverage, any injury was purely contingent and speculative. See, *e.g.*, *Stephens v. Worden Insurance Agency, LLC*, 859 N.W.2d 723, 733-34 (Mich. Ct. App. 2014) (negligent procurement claim accrues when the insurer denies the insured's claim because "on that date any speculative injury becomes certain, and the elements of the negligence action are complete"); *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 560 N.E.2d 122, 124 (Mass. App. Ct. 1990) ("[i]f no accident produces a claim,

the failure will have been negligence in the abstract"); see also *Austin v. Fulton Insurance Co.*, 444 P.2d 536, 539 (Ala. 1968) (until there was a loss for which the plaintiff was not protected, no legally protected interest had been invaded).

¶ 54    Accordingly, taking the allegations of the complaint in the light most favorable to the Krops, as required under section 2-619 of the Code (*Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008)), their cause of action accrued in August 2014, when their claim for coverage under their homeowner's insurance policy was denied. When they filed their third-party complaint in September 2015, the two-year limitations period had not yet run.

¶ 55    Instead of applying these well-settled accrual principles in negligence actions, the majority applies accrual theories relating to contracts and "torts arising out of contractual relationships" to conclude that the Krops' cause of action accrued at the time of the breach. *Supra* ¶¶ 17-18, 35. To support this theory, the majority relies primarily on a series of cases involving causes of action against insurance producers, including *Hoover v. Country Mutual Insurance Co.*, 2012 IL App (1st) 110939, ¶ 52; *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 565 (2009); and *Indiana Insurance Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300, 303-04 (2001).

¶ 56    Although those cases indeed use this hybrid term of a "tort arising out of a contractual relationship," like the majority, none of these cases explain the doctrinal underpinnings of such a cause of action or explain the contours of these types of hybrid claims in the context of section 2-2201. The *Hoover* and *State Farm* cases rely on the *Machon* case. *Machon* involved a contractual relationship between an insurer and its agent. *Machon*, in turn, relies primarily on *Lobianco*, 69 Ill. 2d 126. *Lobianco* was not a case involving insurance producers or the negligent procurement of insurance. *Lobianco* relies, in turn, on the nineteenth-century case of *Pennsylvania Co. v. Chicago, Milwaukee & St. Paul Ry. Co.*, 144 Ill. 197 (1893), involving common carriers for hire and their negligent conduct in transporting certain goods. Additionally, the majority relies on *Hermitage Corp.*, 166 Ill. 2d at 77, where this court relied on *Lobianco*, in a case where the parties agreed that a negligence claim arose out of a breach of an oral contract, in considering the five-year statute of limitations on unwritten contracts. The majority fails to recognize that none of these cases inform our analysis here.

¶ 57    Significantly, the majority never identifies a contract from which this negligence action arises. The majority does not suggest that the contract at issue is the insurance policy itself. Nor has it identified any conduct that would constitute a contract.

¶ 58    Furthermore, neither the majority opinion nor the cases it relies upon explain how applying this hybrid cause of action and contract accrual principles would survive the economic loss doctrine in this context. In *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 86 (1982), this court held that generally a plaintiff cannot recover in tort for solely economic losses, limiting recovery to contract damages. This doctrine has been applied to liability premised on the mere negligent performance of a contractual obligation where the duty is defined by the contract executed with the client. See *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 317 (1990). However, we have explained that, where the duties owed arise outside of the contract, the plaintiff may seek recovery in *tort* for breach of those independent duties. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162 (1994). The majority has made no

effort to fit this hybrid cause of action and its application of contract accrual principles into any exception to the economic loss doctrine.

¶ 59    With no attempt by the case law to explain why contract accrual principles apply to a negligent procurement claim under section 2-2201, it appears that prior cases chose this analytical framework on purely public policy grounds. *Hermitage*, for example, expressed the "concern that plaintiffs will delay bringing suit after a contract is breached in order to increase damages." *Hermitage*, 166 Ill. 2d at 77. However, in adopting section 2-2201(a), the legislature has expressed the public policy of this state to be that insurance producers, whether brokers or captive agents, have a duty of ordinary care and that liability rests in negligence principles, allowing recovery in tort. 735 ILCS 5/2-2201(d) (West 2014) ("the provisions of this [s]ection do not limit or release an insurance producer *** from liability for negligence concerning the *** procurement *** or failure to procure any policy of insurance").

¶ 60    As a matter of statutory interpretation, we must construe the language as written without reading into it exceptions, limitations, or conditions the legislature did not express. *Moon v. Rhode*, 2016 IL 119572, ¶ 22. Nothing in the language of section 2-2201 suggests that the cause of action is a "tort arising out of a contractual relationship" or implicates contract theories. We cannot read these contract ideas into the plain language of the statute. Indeed, we explained in *Skaperdas* that the duties owed under section 2-2201 do not depend upon any contract. *Skaperdas*, 2015 IL 117021, ¶ 25. Nor can we add language to the statute of limitations as provided in section 13-214.4. Nothing in the language of that section suggests that the legislature meant to incorporate contract accrual principles. 735 ILCS 5/13-214.4 (West 2014).

¶ 61    The suspect logic in the majority's opinion is laid bare by its reliance on *Hermitage*. Recognizing that the statute of limitations does not define what constitutes accrual, the majority relies on *Hermitage* as authority to "fill this gap" in the statute. *Supra* ¶ 17. The language quoted from *Hermitage* is accurate but ignores the context.

¶ 62    The *Hermitage* case involved a claim by a mechanic's lienholder who sued the preparer of the lien for negligence, negligent and unauthorized practice of law, consumer fraud, and breach of warranty. *Hermitage*, 166 Ill. 2d at 75-76. The parties agreed that these common-law theories, other than fraud, arose from an oral contract for services to which a five-year statute of limitations applied. *Id.* at 76. The causes of action were not based on any statute.

¶ 63    Unlike *Hermitage*, in this case, there is no gap to be filled. Section 2-2201 simply articulates a cause of action for negligence. Under the statute, the Krops presented a cause of action for negligence, and the statute of limitations for that claim was triggered by normal negligence accrual principles.

¶ 64    Furthermore, the majority concludes that the discovery rule will typically not delay the accrual period because an insurance customer's duty to read the policy generally acts to put the customer on notice of the injury. This conclusion is premised on the erroneous notion that the injury accrues when the plaintiff is issued a policy that does not cover all of the possible contingent future liability that would have been covered under the requested policy. As explained, the breach itself is not actionable. No negligent procurement action could arise until there was a loss for which an insurance claim was made and denied because, until that moment, there could be no actual damages.

- 14 -

¶ 65      Although the accrual issue has received diverse treatment in other jurisdictions, to hold that the date the injury accrues is the date of the negligent act allows the cause of action to be barred before any actionable injury resulted. If plaintiffs had brought suit in 2012 when they received the allegedly defective policy, their complaint would not have survived a section 2-615 motion to dismiss because no actual damages had yet occurred. Under the majority's view, the cause of action for negligent procurement by an insurance producer under section 2-2201 is essentially a dead letter if the underlying liability claim is not brought within two years from the date the policy was issued.

¶ 66      Under these circumstances, the statute of limitations essentially becomes a statute of repose, contrary to the legislative intent of section 13-214.4. 735 ILCS 5/13-214.4 (West 2014). Had the legislature sought this outcome, it could have drafted the statute of limitations to expressly state that a cause of action concerning an insurance producer's procurement of insurance shall be brought within two years of the date the policy of insurance was issued. It did not do so.

¶ 67      Whether a corresponding duty to read the policy may be alleged as an affirmative defense to a claim for negligent procurement is a separate question, involving the merits of plaintiffs' cause of action. However, the majority's conclusion eviscerates the duty of the insurance producer to notify a prospective insured of the rejection of the risk. *Skaperdas*, 2015 IL 117021, ¶ 37. Moreover, whether the deficiencies in a policy are readily apparent from reading it may involve questions for the trier of fact, including the sophistication of the insured and the complexity of the policy. These questions, however, are not at issue here on a motion to dismiss.

¶ 68      In sum, this is a tort action and should be analyzed under the proper tort framework. Interpreting the cause of action in this manner effectuates the statute's legislative intent to impose this legal duty as a matter of policy. To construe the cause of action as a tort arising out of a contractual relationship defeats the purpose of section 2-2201 by rendering negligence actions against insurance producers for failure to procure requested insurance an illusory form of recovery for resulting damage that ensues. Accordingly, I respectfully dissent.

¶ 69      JUSTICE KILBRIDE joins in this dissent.